1   Michelle Gillette (SBN 178734)
    mgillette@mintz.com
2   MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
    44 Montgomery Street 36th Floor
3   San Francisco, California 94104
    Telephone:  415-432-6000
4   Facsimile:  415-432-6001

5   Michael T. Renaud (Mass SBN 629783)
    MTRenaud@mintz.com
6   James M. Wodarski (Mass SBN 627036)
    JWodarski@mintz.com
7   Michael C. Newman (Mass SBN 667520)
    mcnewman@mintz.com
8   Stephen P. Cole (Mass SBN 669648)
    spcole@mintz.com
9   MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
    One Financial Center
10  Boston, MA 02111
    Telephone:  617-542-6000
11  Facsimile:  617-542-2241

12  Attorneys for Plaintiff,
    STRAIGHT PATH IP GROUP, INC.

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16               SAN FRANCISCO DIVISION

| | |
|---|---|
| 17  STRAIGHT PATH IP GROUP, INC. | Case No.  3:14-mc-80150-WHA |
| 18              Plaintiff. | [E.D. Tex. Case Nos. 6:13-cv-604; 6:13-cv-605; 6:13-cv-606; 6:13-cv-607] |
| 19          vs. | |
| 20  BLACKBERRY LIMITED, BLACKBERY CORPORATION | **STRAIGHT PATH IP GROUP, INC.'S CORRECTED OPPOSITION TO NETFLIX, INC.'S MOTION TO QUASH STRAIGHT PATH'S SUBPOENA *AD TESTIFICANDUM*** |
| 21 | |
| 22              Defendants, | |
| 23          vs. | Before:  Hon. William Alsup |
| 24  NETFLIX, INC. | Place:    Courtroom 8, 19th Floor<br>Date:     07/24/2014<br>Time:     8:00 a.m. |
| 25              Movant. | |

26

27

28

# TABLE OF CONTENTS

I.     STATEMENT OF ISSUES TO BE DECIDED .................................................1

II.    INTRODUCTION ..........................................................................................1

III.   STATEMENT OF FACTS ............................................................................2

    A.   This Subpoena Arises From Actions Straight Path Filed in the Eastern District of Texas ........................................................................................................2

    B.   Netflix Failed to Produce Some of the Same Discovery in an ITC Investigation ........3

    C.   Straight Path Has Negotiated the Texas Subpoena in Good Faith.................................7

IV.    ARGUMENT .................................................................................................10

    A.   Legal Standard ........................................................................................10

    B.   Netflix's Motion to Quash Straight Path's Deposition Subpoena Should Be Denied ............................................................................................................11

        1.   The Testimony Straight Path Seeks from Netflix is Highly Relevant ...............12

        2.   Straight Path Needs the Testimony from Netflix.................................................13

            a.   Netflix has agreed to produce additional documents that could not have been the subject of testimony in the ITC Investigation....................13

            b.   Straight Path requires testimony due to the different evidentiary standards at the ITC .........................................................................14

        3.   There Is No Undue Burden on Netflix in Providing the Testimony...................15

            a.   The Testimony Sought Is Not Duplicative ................................................15

            b.   The Texas Defendants Are Not the Best Source for the Netflix Information ............................................................................................16

            c.   The Damages Information Sought is Not Overbroad ...............................16

        4.   Straight Path's Separate Actions Do Not Excuse Netflix from Complying With Straight Path's Subpoena .........................................................................17

            a.   It is not proper to bar relevant discovery in one action simply because the discovery sought may also be relevant to another action....................17

            b.   The cases cited by Netflix do not stand for the cited propositions ...........18

V.     CONCLUSION................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bibolotti v. Am. Home Mortg. Servicing, Inc.*,
No. 4:11-cv-472, 2013 U.S. Dist. LEXIS 69242 (E.D. Tex. May 15, 2013) ............................ 14

*Certain Lens-Fitted Film Packages*,
ITC Inv. No. 337-TA-406, Order 117 (Nov. 17, 2003) ...................................................... 6

*Chevron Corp. v. Donsiger*,
Case No. 12-mc-80237, 2013 U.S. Dist. LEXIS 119622
(N.D. Cal. Aug. 22, 2013) ................................................................................................ 11

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006.) .......................................................................... 10, 11, 19

*Heat & Control, Inc. v. Hester Industries, Inc.*,
785 F.2d 1017 (Fed. Cir. 1986) ................................................................................. 10, 11

*Koch v. Royal Wine Merchs., Ltd.*
2013 U.S. Dist. LEXIS 148376 (N.D. Cal. Oct. 15, 2013) ................................................. 17, 18

*Leanders v. Yassai (In re Yassai)*,
225 B.R. 478 (Bankr. C.D. Cal. 1998) ...................................................................... 10, 15

*Orr v. Bank of Am.*,
285 F.3d 764 (9th Cir. 2002) .................................................................................... 13, 17

*Tessera, Inc. v. Micron Tech., Inc.*,
Case No. C-06-80024-MISC-JW, 2006 U.S. Dist. LEXIS 25114
(N.D. Cal. Mar. 22, 2006) ................................................................................................ 10

*Truswal Sys. Corp. v. Hydro-Air Eng'g. Inc.*,
813 F.2d 1207 (Fed. Cir. 1987) ........................................................................... 10, 11, 12

**Statutes**

19 U.S.C. § 1333(b) ........................................................................................................... 6

19 U.S.C. § 1337 ............................................................................................................... 3

19 CFR § 210.32(g) ........................................................................................................... 6

Fed. Evid. R. 801(c), 804(b)(1) .................................................................................. 2, 13, 17

Fed. Evid. R. 901 ............................................................................................................. 14

CORRECTED OPPOSITION TO NETFLIX'S MOTION TO QUASH SUBPOENA *AD TESTIFICANDUM*
Case No.  MISC. 3:14-MC-80150-WHA

Fed. R. Civ. P. 26 ........................................................................................................... 10, 11

Fed. R. Civ. P. 45 ..................................................................................................... 10, 11, 19

Fed. R. Civ. P. 34 ................................................................................................................ 10

CORRECTED OPPOSITION TO NETFLIX'S MOTION TO QUASH SUBPOENA *AD TESTIFICANDUM*
Case No.  MISC. 3:14-MC-80150-WHA

## I.   STATEMENT OF ISSUES TO BE DECIDED

Whether Netflix must comply with Straight Path's subpoena *ad testificandum* because it is uncontested that the documents and testimony are relevant to the Texas Actions, because Straight Path needs the discovery from Netflix, and because the burden on Netflix is minimal.

## II.   INTRODUCTION

Not only should Netflix's motion to quash Straight Path's subpoena *ad testificandum* be denied, as Netflix has not and cannot overcome the high burden required to quash the subpoena, but Straight Path's Motion to Compel Compliance with its subpoena *ad testificandum* and *duces tecum* should be granted (see Docket No. 14).  The testimony Straight Path seeks is highly relevant, is necessary for Straight Path to prosecute its case, and does not impose an undue burden on Netflix.  It is telling that Netflix does not dispute the testimony's relevance, nor could it.  Netflix's application and server functionality, in combination with the named defendants' devices, is directly at issue in the Texas Actions.

Because relevance is uncontested, Netflix instead implies that Straight Path does not need the testimony because it would be duplicative of the testimony provided in a previous ITC Investigation.  This argument fails for several reasons.  First, it is improper to bar relevant discovery simply because the same discovery is sought elsewhere.  Second, this suggestion ignores that Straight Path seeks additional documents and source code in the Texas Actions that were not, and could not have been the subject of the testimony provided in the ITC Investigation.  Straight Path is entitled to a Netflix witness on these new materials, which are expected to add context and meaning to previously produced materials — context that only a Netflix witness can provide.

Also, Netflix's suggestion that testimony would be duplicative is misplaced because of the very different evidentiary standards at the ITC.  At the ITC, documents are deemed authentic and hearsay is generally admissible.  In the Texas Actions, Straight Path needs to authenticate documents and further explore testimony that contains hearsay.  Furthermore, there are evidentiary issues with admitting testimony from a separate action in which the defendants in the Texas Actions

CORRECTED OPPOSITION TO NETFLIX'S MOTION TO QUASH SUBPOENA *AD TESTIFICANDUM*
Case No.  MISC. 3:14-MC-80150-WHA

1    were not involved.  See Fed. Evid. R. 801(c), 804(b)(1).  Thus, the subpoenaed testimony in the

2    Texas Actions will not be duplicative of the testimony from the ITC Investigation.

3            Finally, there is no undue burden on Netflix.  Netflix presents no evidence pertaining to the

4    time, cost, or inconvenience entailed in providing the information or witnesses.  Contrary to

5    Netflix's inflammatory rhetoric, Straight Path has worked diligently to minimize the burden on

6    Netflix, both in the ITC Investigation and in the Texas Actions.

7            For all of these reasons, Netflix's Motion to Quash should be denied.

8    **III.   STATEMENT OF FACTS**

9        **A.   This Subpoena Arises From Actions Straight Path Filed in the Eastern District of
              Texas**

10           On August 23, 2013, Straight Path filed the underlying actions in the Eastern District of

11   Texas against the Blackberry, Huawei, Samsung, and ZTE defendants (the "Texas Actions" against

12   the "Defendants").[1]  See Newman Decl. ¶ 3, Exs. A-D.  In each complaint, Straight Path asserted

13   that the respective Defendant infringed U.S. Patent Nos. 6,009,469 (the "'469 Patent"); 6,108,704

14   (the "'704 Patent"); and 6,131,121 (the "'121 Patent") (together the "Asserted Patents"), all of

15   which claim computer programs and methods for establishing point-to-point communication links

16   over a network.  Contrary to Netflix coining the Asserted Patents "VoIP Patents," they are not so

17   limited.  The Asserted Patents' claims are directed toward point-to-point network communications.

18   For example, the '704 Patent is entitled "Point-to-Point Internet Protocol."  See id. ¶ 4, Ex. E.  Such

19   point-to-point communications are certainly useful in voice over internet protocol ("VoIP")

20   communications, but they are also used in media streaming applications including Netflix's video-

21

22   _____

23   [1] The Defendants are Blackberry Ltd., Blackberry Corp., Huawei Investment & Holding Co.,
         Ltd., Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device USA, Inc.,
24       Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung
         Telecommunications America, L.L.C., ZTE Corporation, and ZTE USA, Inc.  The Actions are
25       E.D. Tex. Case Nos. 6:13-cv-604, *Straight Path IP Group, Inc. v. BlackBerry Ltd., et al.*; 6:13-cv-
         605, *Straight Path IP Group, Inc. v. Huawei Investment & Holding Co., Ltd., et al.*; 6:13-cv-606,
26       *Straight Path IP Group, Inc. v. Samsung Electronics Co., Ltd., et al.*; 6:13-cv-607, *Straight
         Path IP Group, Inc. v. ZTE Corporation, et al.*

27

28

on-demand system ("Netflix System").  *Id.* ¶ 5, Ex. F-H.  In the claimed inventions, a server helps create a point-to-point communication link between two computer processes.  Upon connecting to the network, the first process receives a network protocol address and sends this network protocol address to the server (the "Address Server").  It then queries the server about a second process.  It receives a response from the server with the network protocol address of the second process, and the status of whether or not the second process is online.  The first process and second process then establish a point-to-point communication link, which is not intermediated by the Address Server.

On January 27, 2014, Straight Path served its infringement contentions on the Defendants in which it identified the Netflix System as an infringing component of the accused products made and sold by Huawei, Samsung, and ZTE.  *Id.*  On March 17, 2014, Straight Path served a subpoena ("Texas Subpoena") on Netflix, Inc. ("Netflix") to obtain discovery on the structure, function, and operation of the Netflix System.  This is the subpoena at issue here.

### B.    Netflix Failed to Produce Some of the Same Discovery in an ITC Investigation

This is not the first time Straight Path has requested, and Netflix has withheld, this information.  On August 1, 2013, Straight Path instituted an investigation in the ITC alleging that AmTRAN, LG, Panasonic, Sharp, Sony, Toshiba, and Vizio ("Respondents") were violating 19 U.S.C. § 1337 by importing certain point-to-point network communication devices that infringed Straight Path's patents (the "892 Investigation" or "ITC Investigation").  In its complaint, Straight Path asserted the same three patents at issue in the Texas Actions, and identified a number of point-to-point network communication devices and products containing same that infringe the patents at issue through their incorporation and use of the Netflix application.  *Id.* ¶ 6, Ex. I-J.

Immediately after the institution of the ITC Investigation, Straight Path served written discovery on the respondents seeking information regarding the Netflix system.[2]

---

[2] The Netflix functionality accused of facilitating infringement of the asserted patents through its operation on the accused devices generally consists of a client side application and several content servers to which the client side application may connect in order to stream media. The discovery Straight Path seeks relates to the structure, function, and operation of the content servers for the Netflix service.

On October 8, 2013, which was during the United States federal government shutdown of 2013 that closed the ITC, respondents answered Straight Path's discovery requests, but not a single one provided the requested Netflix information in their discovery responses. Instead, respondents suggested that the information Straight Path sought was in the possession of Netflix and should be sought from them. *See id.* ¶ 8. Seven business days after the ITC reopened, Straight Path applied for issuance of a subpoena to Netflix. *Id.* ¶ 9. ALJ Shaw issued the subpoena *duces tecum* and *ad testificandum* to Netflix on October 29, 2013. *Id.* ¶ 10. Netflix's response was initially due on November 8, 2013. *Id.*

Netflix delayed in responding to Straight Path's subpoena. Netflix asked Straight Path for additional time to respond, and Straight Path offered it an additional week to enable the parties to narrow the scope of the subpoena. *Id.* ¶ 11, Ex. K. Netflix, wanting even more time, declined Straight Path's offer, and instead filed a motion for an extension of time to respond to the subpoena to November 22, 2013, which was granted. During this time, the parties continued to work to narrow the scope of the subpoena. On November 21, 2013, Netflix asked for even more time to respond to the subpoena. *Id.* Despite the seeming progress that the parties had made, on November 22, 2013, Netflix moved to quash the subpoena in its entirety. *Id.* ¶ 12. On November 25, 2013, the ALJ denied Netflix's motion to quash as procedurally defective, but permitted Netflix to refile.[3] *See id.*, Ex. L. Netflix could have cured the defect and refiled in a matter of hours, but instead delayed even more. *See id.* ¶ 13, Ex. M. Netflix finally filed its motion to quash on December 2, 2013, over a month after service of the subpoena (which was significantly after the 10-day time limit to file a motion to quash per the Ground Rules in the 892 Investigation[4]), and only eight weeks prior to the close of fact discovery. Netflix argued that the subpoena should

---

[3] Netflix initially filed its motion to quash on November 22, 2013, but the motion was denied by the ALJ for failure to comply with Ground Rule 5.l, which sets forth the procedure for filing Confidential Information.

[4] Ground Rule 1.j. states that "[a]ny motion to limit or quash a subpoena shall be filed within 10 days after receipt thereof, or within such other time as the administrative law judge may allow…"

1    be quashed because Straight Path could obtain the needed discovery from the parties in the action.

2    This argument was suspect, as the respondents (including AmTRAN[5], also represented by Netflix's

3    same counsel), had already refused to provide the requested discovery and directed Straight Path to

4    obtain the discovery from Netflix.

5         Once Netflix filed its motion to quash, it ceased working with Straight Path in any

6    meaningful way.  On January 9, 2014, only two weeks before the close of fact discovery, the ALJ

7    denied Netflix's motion to quash, finding that Straight Path was entitled to discovery from Netflix

8    even if the discovery was also available from the Respondents.  *See id.* ¶ 15, Ex. N ("Order No.

9    16") at 1-2.  Straight Path immediately contacted Netflix to request the production of the source

10   code, documents, and deposition witness requested by the subpoena.  *See id.* ¶ 16, Ex. O (2014-01-

11   09 Email from Newman to Coughlan).  Instead of producing the requested discovery as ordered,

12   Netflix further delayed by arguing that the ALJ's order required it to "narrow its subpoena," and

13   refusing to produce.  *See id.* ¶ 17, Ex. P (2014-01-10 Ltr from Coughlan to Newman).  Netflix's

14   argument was in direct contradiction to the ALJ's order denying Netflix's motion to quash, as

15   Straight Path had already narrowed the subpoena "as set forth in its briefs."  *See id.* ¶ 18, Ex. Q

16   (2014-01-13 Ltr from Renaud to Coughlan (quoting Order No. 16 at 1-2)).

17        Netflix also continued to argue that Straight Path should seek the discovery from

18   respondents, an argument specifically refused by the ALJ.  *See* Order No. 16 at 1-2 ("The fact that

19   information Straight Path seeks through the subpoena to Netflix may be available through discovery

20   propounded to the named respondents does not extinguish Straight Path's right to seek the same

21   information from a third party.  The administrative law judge is not persuaded by Netflix's

22   argument that Straight Path should be limited to seeking discovery only from the named

23   respondents."))[6]  For example, on January 15, Netflix used this same argument in responding to a

24   ───────────────────────

25   [5] The AmTRAN Respondents in the 892 Investigation were AmTRAN Technology Co., Ltd. and
     AmTRAN Logistics, Inc.

26
     [6] Despite having already lost this issue in the ITC, Netflix raises the same exact losing argument in
27   its present motion to quash.  *See* Mot. at 11:2-13.

28

CORRECTED OPPOSITION TO NETFLIX'S MOTION TO QUASH SUBPOENA *AD TESTIFICANDUM*
Case No.  MISC. 3:14-MC-80150-WHA

request to review source code by stating that the "releases of the Netflix SDKs provided to the Respondents will not be on the review computers because we understand that this code is available to Straight Path via at least the Panasonic and Vizio Respondents." *Id.* ¶ 19, Ex. R. Netflix also again argued that it did not need to provide a deposition witness, despite the ALJ's order denying in full Netflix's motion to quash the subpoena. *Id*.

On January 16, 2014—eight days before the close of fact discovery—Netflix first made its source code available for inspection. Straight Path diligently reviewed the source code and determined that Netflix had not produced certain source code for the content delivery network ("CDN") servers, even though it was specifically requested in the subpoena. Although Straight Path continued to request the server-side source code through the January 24, 2014 close of fact discovery, Netflix failed to produce it. *See id.* ¶ 20, Ex. S (2014-01-27 Email from Renaud to Coughlan). Moreover, Netflix did not provide a deposition witness until February 11, 2014, nineteen days after the close of fact discovery. *See id.* ¶ 22, Ex. T. During that deposition, and consistent with Netflix's withholding certain CDN source code, Netflix's counsel objected to questions relating to CDN servers and the processes running on them as outside the scope of the witness's designation. *See id*. ¶ 23. By the time of the deposition, when it became clear that Netflix would not provide discovery or testimony on the CDN servers or the processes running on them, the February 7, 2014 deadline for filing motions to compel had passed.[7]

---

[7] Compelling discovery from Netflix would have involved filing a last minute opposed motion to expand the time to move to compel. If the ALJ granted this expansion, Straight Path would have then been permitted to move to enforce the subpoena. In the ITC, a party seeking enforcement of a third party subpoena may submit a motion to the ALJ seeking enforcement thereof. If the ALJ determines that enforcement of the subpoena is warranted, s/he shall certify a request for judicial enforcement of the subpoena to the Commission. (19 CFR § 210.32(g).) The ALJ's certified request must be accompanied by a report that demonstrates the purpose, relevance, and reasonableness of the subpoena. (*Id*.) If the Commission grants the ALJ's certified request, its Office of the General Counsel will enforce the subpoena through the U.S. District Court that has jurisdiction over the recipient of the subpoena. (*See* 19 U.S.C. § 1333(b).) Although judicial enforcement of subpoenas is generally processed as expeditiously as possible, the enforcement procedure is nevertheless lengthy. *See Certain Lens-Fitted Film Packages*, ITC Inv. No. 337-TA-406, Order 117 (Nov. 17, 2003). Given Netflix's systematic delay, it was highly unlikely that the dispute between Straight Path and Netflix would have resolved prior to the May 13, 2014 Hearing date. As the Asserted Patents expire in 2015, this delay would have eviscerated the prospective relieve available at the ITC.

The Parties and third parties that had complied with their discovery obligations settled with Straight Path, leaving only Netflix-based infringement remaining in the ITC Investigation.  On April 29, 2014, Straight Path and the Respondents exchanged their pre-hearing briefs.  Amazingly, in their pre-hearing brief, respondents argued that Straight Path did not have sufficient evidence to prove infringement because it lacked the very evidence Netflix had withheld.  *See id.* ¶ 24.  In particular, the respondents argued that Straight Path failed to prove that the Netflix CDN servers satisfy an element of the asserted claims by pointing to the very discovery they (and Netflix) refused to provide.  *Id.*  This argument was articulated the strongest by the Toshiba respondents, who shared Netflix's counsel as of April 24, 2014.[8]

Netflix's systematic delay in producing discovery provided Straight Path with no recourse other than to pursue its claims against the Respondents and Netflix in district court.  As a direct result of Netflix's failure to produce discovery on the CDN servers, Straight Path was forced to withdraw the remainder of its complaint and terminate the ITC Investigation.  *Id.* ¶ 25.  On May 2, 2014, the Friday before Straight Path filed its motion to terminate the 892 Investigation, Straight Path filed a complaint against Netflix in the Eastern District of Texas.  *Id.* ¶ 26, Ex. U.[9]

**C.    Straight Path Has Negotiated the Texas Subpoena in Good Faith**

Straight Path has worked in good faith with Netflix over the past two months to narrow the Texas subpoena to the minimum discovery required in the Texas Actions.  *See* Cole Decl. ¶ 6, Ex. B. (2014-04-08 Email from Cole to Chen ("As a matter of compromise and to minimize the burden on Netflix, we propose that Netflix serve its objections and the ITC documents on April 22."));  *id.* ¶ 7, Ex. C (2014-04-15 Email from Cole to Chen ("Straight Path agreed to provide Netflix with an

---

[8] Straight Path settled with the AmTRAN respondents on April 16, 2014.  Seven days later, Netflix's counsel made an appearance on behalf of the Toshiba respondents.

[9] In its Motion to Quash, Netflix amalgamates every case Straight Path has filed to suggest that Netflix has been implicated in each. Mot. at 3 n.2. Of the 16 cases Netflix cites in its Motion to Quash, five do not implicate Netflix at all, and another six involve ITC respondents and identical claims as in the ITC (the cases were staying pending the outcome of the ITC Investigation). Four of these six co-pending cases have or will be terminated due to settlement.

CORRECTED OPPOSITION TO NETFLIX'S MOTION TO QUASH SUBPOENA *AD TESTIFICANDUM*
Case No . MISC. 3:14-MC-80150-WHA

1    extension until April 25, 2014 to produce the documents and source code requested in Straight

2    Path's subpoena that Netflix did not produce in the ITC 892 investigation.  Straight Path stated that

3    it intends to work with Netflix to narrow the subpoena to a mutually-agreeable scope between now

4    and April 25.")); *id.* ¶ 8, Ex. D (2014-04-29 Email from Cole to Chen ("We agreed to extend the

5    deadline until May 14 for Netflix to produce any new documents (not including the documents

6    Netflix produced in the ITC action that it re-produced in the Texas actions on April 22) or source

7    code and to provide a deposition witness.")).

8              On April 22, 2014, Netflix produced in the Texas Actions the <u>documents</u> that it produced in

9    the 892 Investigation.  It did not, however, produce the <u>source code</u> or <u>deposition testimony</u> that

10   was produced in the 892 Investigation.  Although the parties have continued to negotiate the

11   subpoena, Netflix has still not produced in the Texas Actions the full complement of discovery that

12   it produced in the 892 Investigation, e.g., the discovery pointed out in the ITC pre-hearing briefs as

13   relevant and missing from Straight Path's proof regarding infringement.  Specifically, Netflix has

14   not yet produced a source code review computer with the source code that Netflix made available

15   for inspection in the 892 Investigation, the source code printouts that it produced in the 892

16   Investigation, or the deposition transcript that Netflix provided in the 892 Investigation.  Nor has it

17   produced any of the new discovery that Straight Path seeks through the subpoena—the very same

18   discovery that Netflix withheld in the 892 Investigation.

19             On May 13, 2014, Straight Path made a further-narrowed discovery proposal to Netflix

20   limited to the minimum discovery that it needed in connection with the Texas Actions: (a) the

21   source code, source code printouts, and deposition transcript of Netflix from the 892 Investigation;

22   (b) documents and source code relating to Netflix's servers that Netflix did not produce in the 892

23   Investigation; (c) past versions of six specific documents from Netflix's document production

24   identified by Bates number; (d) marketing, sales, and revenue information on the Netflix System as

25   it relates to the Defendants; and (e) a deposition witness to testify on the newly-produced

26   documents and source code and the differences, if any, between the past versions of the client- and

27

28

server-side source code and the present version. *See id.* ¶ 9, Ex. E (2014-05-13 Ltr from Cole to Chen).

Netflix responded on May 21, 2014, agreeing to produce certain discovery on certain conditions. *See id.* ¶ 10, Ex. F (2014-05-21 Ltr from Chen to Cole). First, Netflix agreed to re-produce the source code discovery from the 892 Investigation, provided that Straight Path agree that the production would exhaust Straight Path's ability to print any additional hardcopies of Netflix source code.[10] *Id.* Second, Netflix agreed to produce source code relating to Netflix's CDN servers provided that Straight Path agree that such production would completely fulfill Netflix's discovery obligations in any action, filed now or in the future, that involved the Asserted Patents or their family members. *Id.* Finally, Netflix refused to provide additional documents (including damages-related documents) or a deposition witness because it claimed that it already provided this discovery in the 892 Investigation. *Id.*

On May 23, 2014, Straight Path informed Netflix that it could not agree to the conditions in Netflix's May 21 letter. *See id.* ¶ 11, Ex. G (2014-05-23 Email from Cole to Chen). In particular, Straight Path stated that Netflix's condition with respect to source code printouts was unworkable, in that Straight Path would not be able to print a single page of any newly-produced Netflix source code because of page limitations in the Protective Order. Id. In addition, Straight Path could not agree to forego any future discovery from Netflix because different products are at issue in each action, including the direct action against Netflix, which also involves different patents than the Texas Actions. *Id.*

///

///

///

---

[10] In the ITC Investigation, Netflix and Straight Path agreed to additional protections for Netflix source code. For example, each individual source code printout shall be limited to no more than 75 consecutive pages, and all printouts, in the aggregate, shall not exceed 750 pages. Netflix seeks the same protection in the Texas Actions.

IV.   **ARGUMENT**

A.   **Legal Standard**

The test for determining whether a subpoena should be quashed balances: (1) the relevance of the discovery sought; (2) the need of the requesting party; and (3) the potential hardship to the party responding to the subpoena.  *See Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986); *see also Gonzales v. Google, Inc*., 234 F.R.D. 674, 680 (N.D. Cal. 2006.)  The burden of proof falls on the party seeking to quash or modify a subpoena.  *See Truswal Sys. Corp. v. Hydro-Air Eng'g. Inc*., 813 F.2d 1207, 1210 (Fed. Cir. 1987).  This burden is "particularly heavy."  *Id.*; *see also Leanders v. Yassai (In re Yassai)*, 225 B.R. 478, 484 (Bankr. C.D. Cal. 1998) ("Movants presented no evidence pertaining to the time, cost, or inconvenience entailed in responding to the Third-Party Subpoenas.  Consequently, Movants have failed to meet their burden in demonstrating an undue burden.")

Under Federal Rule of Civil Procedure 45, any party may serve a subpoena on a non-party commanding the non-party to "attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  The scope of discovery of a subpoena served on a non-party is the same as a party served with Rule 34 requests, and is governed by Rule 26(b).  *Tessera, Inc. v. Micron Tech., Inc.*, Case No. C-06-80024-MISC-JW, 2006 U.S. Dist. LEXIS 25114, at *8 (N.D. Cal. Mar. 22, 2006) (citing Fed. R. Civ. P. 45 advisory committee notes on 1970 amendments ("scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules.")); Fed. R. Civ. P. 34.

Rule 26(b) allows a party to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense.  Fed. R. Civ. P. 26(b)(1).  Relevance for purposes of discovery is construed more broadly than that for trial, *see Truswal Sys. Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987), and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  "A district court whose only connection with a case

is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder.  Where relevance is in doubt… the court should be permissive." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal, 2006) (quoting *Truswal Sys. Corp.*, 813 F.2d at 1211-1212).

Rule 45 protects a party from "undue burden," and a court may limit discovery if it finds that "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive," if there has been "ample opportunity to obtain the information by discovery in the action," or if "the burden or expense of the proposed discovery outweighs its likely benefit."  Rule 45(d)(1); Fed. R. Civ. P. 26(b)(2)(C).  "Thus, the factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Heat and Control Inc. v. Hester Indus.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986).  On a motion to quash a subpoena, while the party issuing the subpoena must demonstrate that the discovery sought is relevant, the moving party has the burden of persuasion under Rule 45.  *See Chevron Corp. v. Donsiger*, Case No. 12-mc-80237, 2013 U.S. Dist. LEXIS 119622, at *4 (N.D. Cal. Aug. 22, 2013) (citing *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, Case No. 12-80082, 2012 U.S. Dist. LEXIS 76467, at *1 (N.D. Cal. June 1, 2012)).

**B.    Netflix's Motion to Quash Straight Path's Deposition Subpoena Should Be Denied**

Netflix does not move to limit the scope of Straight Path's subpoena *ad testificandum*, but rather moves to quash the subpoena in its entirety.  "The burden is particularly heavy to support a motion to quash as contrasted to some more limited protection." *Truswal Sys. Corp.*, 813 F.2d at 1210.  Netflix cannot overcome its particularly heavy burden.  Netflix does not and cannot dispute that the testimony is highly relevant.  Straight Path's counsel has identified a significant need for the testimony, and Netflix presents no evidence pertaining to the actual burden involved in providing witness(es) for deposition.

1              **1.     The Testimony Straight Path Seeks from Netflix is Highly Relevant**

2        "Where relevance is in doubt… the court should be permissive." *Truswal Sys. Corp.*, 813

3  F.2d at 1211-1212. Here, relevance is not in doubt. Instead, relevance is tacitly admitted by not

4  being disputed by Netflix in its motion. Netflix does not and cannot contest that the subpoenaed

5  testimony is relevant to Straight Path's claims against the Defendants in the Texas Actions, as

6  Straight Path's infringement contentions specifically identify the Netflix System as an infringing

7  component of the Defendants' accused products. *See* Newman Decl. ¶ 5, Exs. F-H. These

8  contentions detail the relevance of Netflix to Straight Path's claims. In fact, Netflix's counsel,

9  through Respondents in the ITC Investigation, took the position that Straight Path cannot prove its

10  case without the discovery Netflix now seeks to quash.

11        In the ITC Investigation, Straight Path similarly identified the Netflix System as an

12  infringing component of the Respondents' accused products. *See id.* ¶ 6, Exs. I, J. There, again

13  without challenging the relevance of the discovery sought, Netflix tried and failed to quash Straight

14  Path's ITC subpoena. The ALJ denied Netflix motion to quash because there, as here, he found that

15  "**Netflix does not appear willing to work towards a compromise position, but rather seeks to**

16  **quash the entire subpoena.**" Order No. 16 at 2 (emphasis added). Despite losing its motion to

17  quash, and despite Straight Path continuing to request the server-side CDN source code through

18  close of fact discovery, Netflix failed to produce this code. *See id.* ¶ 20, Ex. S (2014-01-27 Email

19  from Renaud to Coughlan (requesting meet and confer to address production of server-side code

20  missing from Netflix's production)).

21        In Respondent Toshiba's ITC pre-hearing brief (written by counsel shared with Netflix), it

22  argued that Straight Path did not have sufficient evidence to prove that the accused devices

23  preloaded with the Netflix application infringe the asserted patents. *See id.* ¶ 24. Specifically, the

24  respondents argued that Straight Path did not have sufficient evidence to show that the Netflix CDN

25  servers satisfy an element of the asserted claims. Netflix's own counsel based this argument upon

26  Straight Path's failure to obtain the very discovery it had sought from Netflix, and that Netflix

27

28

withheld.  *Id.*  Netflix's counsel has already admitted the relevance of this information, by arguing that Straight Path cannot prove its case without the discovery it now seeks to quash.

### 2.   Straight Path Needs the Testimony from Netflix

Netflix suggests that the deposition transcript from the ITC Investigation should satisfy its obligation with respect to the current subpoena. As described above, Netflix's counsel has already alleged that the deposition testimony at the ITC was insufficient to prove Straight Path's claims. This alone should demonstrate an admitted need for the subpoenaed testimony.

Furthermore, the testimony Straight Path seeks is not duplicative of the ITC testimony for other reasons:  (1) Straight Path seeks, and Netflix has ostensibly agreed to produce, additional documents and source code that were not available during the ITC Investigation, (2) there are more permissive evidentiary standards at the ITC, and thus Straight Path was not motivated during that Investigation to explore issues such as authentication or hearsay, (3) there are evidentiary issues with admitting testimony from a separate action in which the Defendants were not involved (*see* Fed. Evid. R. 801(c), 804(b)(1); *Orr v. Bank of Am.,* 285 F.3d 764, 779 n.27 (9th Cir. 2002)), and (4) Netflix's assertion that the testimony is available from other parties is incorrect—only a Netflix witness can provide the required testimony regarding its system.

### a.   Netflix has agreed to produce additional documents that could not have been the subject of testimony in the ITC Investigation

As will be discussed below, Netflix has agreed to produce additional documents and source code pursuant to Straight Path's subpoena *duces tecum* in the Texas Actions, which Netflix does not move to quash.  The new documents and source code could not have been the subject of testimony in the ITC Investigation, as they relate to processes running on the CDN servers—the very information Netflix withheld from Straight Path in the ITC Investigation.  *See* Cole Decl. ¶ 10, Ex. F.  During that deposition, the Netflix witness was not prepared to testify on the processes running on the CDN servers, and counsel objected to any questions regarding these processes as beyond the scope.  Newman Decl. ¶ 23.  Because this information was previously withheld, Straight Path had no opportunity to question a Netflix witness regarding that information and source code.  The documents Netflix now says it will provide, and particularly the source code, are expected to be

13

highly technical in nature, and are expected to inform the context of previously produced documents.  For example, and without limitation, these documents and source code are expected to inform how programs on the accused devices interface with the processes on the CDN.  Straight Path therefore requires a Netflix witness to testify on these, and other topics.  It would therefore be inappropriate to quash Straight Path's subpoena in the entirety.

> **b.    Straight Path requires testimony due to the different evidentiary standards at the ITC**

Under Federal Rule of Evidence 901, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901.  Such authentication may occur by way of deposition testimony.  *See Bibolotti v. Am. Home Mortg. Servicing, Inc.*, No. 4:11-cv-472, 2013 U.S. Dist. LEXIS 69242, at *9 (E.D. Tex. May 15, 2013) ("An item of evidence may be authenticated in a variety of ways, for example, with testimony of a witness with knowledge of [the item of evidence].")  Where evidence is not authenticated, courts routinely question the value of such evidence.  *See, e.g., id.* ("In this case, Plaintiff has made no attempt to properly authenticate these documents, and thus, the Court finds they are 'of dubious evidentiary value, because they are unaccompanied by any extrinsic evidence of authenticity.'") (citations omitted).

By contrast, in the preceding ITC Investigation, documents were presumed authentic unless extrinsic evidence showed otherwise.  *See Certain Point-to-Point Network Communication Devices*, Order No. 4 at 15 (Ground Rule 9.j.) ("[a]ll documents that appear to be regular on their face shall be deemed authentic, unless it is shown by particularized evidence that the document is a forgery or is not what it purports to be.").  Thus, because authenticity was presumed, none of the material produced by Netflix in the ITC was authenticated by Mr. Fisher-Ogden during his deposition.  Under the Federal Rules of Evidence, such discovery requires authentication before it can be introduced in the cases pending in the Eastern District of Texas.  Any new material that Netflix produces in the underlying Eastern District of Texas actions, including the source code for content servers and processes running on them, will similarly require authentication.

14

3.    There Is No Undue Burden on Netflix in Providing the Testimony

Netflix's motion does not identify any real burden, and therefore its motion to quash must fail. *See Leanders v. Yassai (In re Yassai)*, 225 B.R. 478, 484 (Bankr. C.D. Cal. 1998) ("Movants presented no evidence pertaining to the time, cost, or inconvenience entailed in responding to the Third-Party Subpoenas.  Consequently, Movants have failed to meet their burden in demonstrating an undue burden.")  Providing additional witnesses for deposition will cause no undue burden or expense, especially as any additional depositions will take place in the Northern District of California, the location of Netflix's headquarters.  While making passing references to "burdensome" discovery, Netflix's real argument is based on its allegations that Straight Path does not really need the testimony.  Netflix alleges that the testimony is duplicative (Mot. at 10-11), that the testimony could be obtained through the Texas Defendants (Mot. at 11), and that damages-related discovery is too broad (Mot. at 11).

a.    The Testimony Sought Is Not Duplicative

Straight Path has no interest in duplicating its efforts.  Rather, Straight Path has worked diligently to accommodate Netflix and minimize any burden.  Netflix now attempts to use Straight Path's suggested compromises against it, citing Straight Path's suggestion that to "minimize the burden on Netflix and Mr. Fisher-Ogden," Straight Path may "forego deposition testimony on the identical subject matter on which Mr. Fisher-Ogden testified in the ITC action."  While Straight Path suggested this in the spirit of compromise, in the same correspondence, Straight Path also expressly stated that it would "still seek a deposition on technical topics relating to Netflix's new document and source code productions, and on damages-related topics that were not covered in the Fisher-Ogden ITC deposition."  Cole Decl., Ex. B (2014-04-08 Email from Cole to Chen).  Straight Path never agreed to forfeit its right to a Netflix deposition to authenticate documents, or address newly discovered material and issues novel to the district court actions.  Netflix refused this offer, and rather than move to limit the subpoena, instead moved to quash in the entirety.

15

### b.    The Texas Defendants Are Not the Best Source for the Netflix Information

Next, Netflix suggests that Straight Path can get the subpoenaed testimony from Defendants. (Mot. at 11). This is the same argument already soundly rejected in the ITC Investigation. *See* Newman Decl., Exh. P (Order No. 16 re Netflix's Motion to Quash Subpoena at 1-2 ("The fact that information Straight Path seeks through the subpoena to Netflix may be available through discovery propounded to the named respondents does not extinguish Straight Path's right to seek the same information from a third party. The administrative law judge is not persuaded by Netflix's argument that Straight Path should be limited to seeking discovery only from the named respondents.")).[11]

Netflix offers little evidence that the Defendants will be able to provide the subpoenaed testimony. Indeed, it is unlikely that the Defendants would be in any position to discuss the differences between the Netflix versions on their devices. Moreover, Straight Path requires a Netflix witness to testify about the structure and function of the Netflix products and systems used on Defendant's devices. This information is solely in the possession of Netflix.

### c.    The Damages Information Sought is Not Overbroad

Finally, Netflix suggests that the testimony Straight Path seeks regarding damages is overbroad. (Mot. at 11). This argument appears to relate to the document production, as opposed to the testimony Netflix aims to quash. Nevertheless, Netflix does not question Straight Path's need for or the relevance of the damages discovery to the Texas Actions, nor could it.

Straight Path seeks testimony regarding (1) Netflix's contracts and licenses with each Defendant, (2) the value or desirability of Netflix Programs on the Defendants' accused devices, and (3) the revenue Netflix associates with its Programs on the Defendants' accused devices. This information is highly relevant to Straight Path's damages case in the Texas Actions. Netflix does not suggest that the information is not in its possession or that it would be burdensome to produce.

---

[11] Despite having already lost this issue in the ITC, Netflix raises the same exact losing argument in its present motion to quash. *See* Mot. at 11:2-13.

1    Instead, Netflix suggest that if Straight Path receives this discovery now, it will have accelerated

2    discovery in the case against Netflix in Texas.  It is not proper to bar relevant discovery in one

3    action simply because the discovery may also be relevant to another action.  *See Koch v. Royal*

4    *Wine Merchs., Ltd.* 2013 U.S. Dist. LEXIS 148376 (N.D. Cal. Oct. 15, 2013).  This suggestion is

5    belied by the fact that Straight Path's deposition topics are narrowly tailored to testimony regarding

6    Netflix's association with the Texas Defendants.  To the extent that Netflix produces documents

7    related to damages as requested, Straight Path is entitled to a witness to testify with respect to those

8    documents.  Again, had Netflix wanted to narrow the subpoenas to avoid damages discovery, it

9    should have moved to limit the subpoena instead of moving to quash in the entirety.

10           **4.      Straight Path's Separate Actions Do Not Excuse Netflix from Complying With**
             **Straight Path's Subpoena**

11

12                    **a.      It is not proper to bar relevant discovery in one action simply because**
                      **the discovery sought may also be relevant to another action**

13           Netflix's primary argument is that Straight Path seeks testimony that has already been

14    provided and that may need to be provided again in the future.  (Mot. at 1-2, 10.)  This argument

15    also fails.  First, there are evidentiary issues with admitting testimony from a separate action in

16    which the Defendants were not involved.  *See* Fed. Evid. R. 801(c), 804(b)(1); *Orr v. Bank of Am.*,

17    285 F.3d 764, 779 n.27 (9th Cir. 2002). Moreover, it is improper to bar relevant discovery simply

18    because the same discovery is sought elsewhere.

19           An instructive case on this point is *Koch v. Royal Wine Merchs., Ltd.* 2013 U.S. Dist. LEXIS

20    148376 (N.D. Cal. Oct. 15, 2013).  In *Koch*, plaintiff Koch subpoenaed third-party Greenburg, who

21    had been deposed as a defendant in an earlier yet still co-pending action (the "Greenberg Action").

22    *Id.* at *6.  Greenberg took the approach that Netflix now takes, and argued that Koch was

23    attempting to harass and intimidate him rather than obtain relevant evidence.  *Id.*  Also similar to

24    Netflix's argument, Greenberg alleged that Koch was improperly attempting to obtain additional

25    discovery for use in the Greenberg Action, and that the testimony Koch would elicit in the

26    deposition would be cumulative and duplicative of Greenberg's prior testimony in the Greenberg

27    action.  *Id.* at *7.  The court denied Greenburg's motion to quash, holding that "it is not proper to

28

17

1   bar relevant discovery in one action simply because the discovery sought may also be relevant to

2   another action." *Id.* at*9 (citing *In re Republic of Ecuador*, 2010 U.S. Dist. LEXIS 132045, at *23-

3   24 (N.D. Cal. Dec 1, 2010); *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992).)   For

4   the same reasons expressed by the court in *Koch*, this Court should deny Netflix motion to quash.

5                    **b.    The cases cited by Netflix do not stand for the cited propositions**

6           Netflix suggests that because Straight Path has now sued Netflix directly, Straight Path

7   should have to wait to get the subpoenaed testimony.[12]   This suggestion would allow Netflix to

8   delay providing testimony until well after the August 2014 deadline in the Texas Actions for

9   substantial completion of discovery, even though the information will be relevant in the Texas

10  Actions.  *See* Cole Decl. ¶ 12, Ex. H.  To support its untenable proposition, Netflix's relies on

11  *Metro-Goldwyn-Mayer Studios, Inc. et al. v. Grockster, Ltd.*, but misconstrues the court's ruling.

12  218 F.R.D. 423 (D. Del. 2003).  The *Grockster* case presented "peculiar circumstances" distinct

13  from the present case, *id.* at 423, and the arguments made by iMesh, the subpoenaed party, to quash

14  the subpoena are entirely inapplicable here.  iMesh argued that the subpoena should be quashed

15  because "iMesh has no employees, officers or directors located within 100 miles of the Court's

16  jurisdiction," and that "no [iMesh] employee within the United States has any information

17  responsive to the subpoena."  *Id.* at 424.  In the present case, Netflix's headquarters, which houses

18  dozens if not hundreds of Netflix employees, is located less than 50 miles from this Court.  iMesh

19  then argued that the subpoena sought "confidential information which is not related to the

20  [underlying action]."  *Id.*  As explained above, Netflix has not once argued that the discovery

21  Straight Path seeks lacks relevance.  Rather, information regarding the structure, function, and

22

_____

23  [12]   Netflix accused Straight Path of delaying service to avoid consolidation, but neglects to mention
      that Straight Path contacted Netflix just three days after filing the complaint against Netflix in Texas
24    asking for Netflix to waive service.  Netflix accepted on the condition that Netflix be allowed to
      delay Responding to Straight Path's complaint for 60 days.  *See* Newman Decl. ¶ 27, Ex. V.
25    Straight Path has since contacted Netflix with regard to footnote 4 of Netflix's Motion to Quash, in
      which Netflix suggests it may prefer to consolidate the Netflix case in Texas with the currently
26    pending cases against Samsung, RIM, Huawei, and ZTE.  *Id.*  Straight Path informed Netflix it
      would consider consolidating the cases so long as consolidation did not impact the set discovery
27    schedule in those cases.  *Id.*  Netflix has not responded.

28

1   operation of the Netflix application is central to the Texas Actions because it is the Netflix

2   functionality on the Texas Defendants' devices that Straight Path accuses of facilitating

3   infringement of the asserted patents.

4          Additionally, the court in *Grockster* granted the motion to quash because the plaintiff did not

5   establish that there was no more appropriate forum: "before putting iMesh to the burden of bringing

6   a witness to Delaware, which is not an unreasonable requirement in the abstract, given iMesh's

7   decision to establish corporate residency here, Plaintiffs must first do more to establish that there is

8   no more appropriate forum, e.g., one where potential witnesses are present, for issuance of

9   compulsory process to obtain deposition testimony." *Id.* at 424-425.  Here, Straight Path is not

10  attempting to depose Netflix in Delaware, where it is incorporated, but instead seeks a deposition of

11  Netflix in the same district containing its corporate headquarters, in an effort to minimize the

12  burden on Netflix.  This is exactly the sort of prevention of inconvenience the *Grockster* court

13  mandated.  *See id.* at 424 (citing *Price Waterhouse LLP v. First American Corp.*, 182 F.R.D. 56, 62

14  (S.D.N.Y. 1998) ("Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings

15  who are asked to testify, not the legal entity for whom those human beings work.").

16         Netflix's citation to *Hasbro, Inc. v. Serafino* is similarly unhelpful.  168 F.R.D. 99 (D. Mass.

17  1996).  While the court in *Hasbro* did limit Rule 45 subpoenas to non-parties, the facts of that case

18  distinguish it from the situation here.  In *Hasbro*, the court found defendant's subpoena to plaintiff

19  improper because the subpoena was directed to a <u>party</u> in the lawsuit.  *See id.* at 100.  Here, Netflix

20  is <u>not a party</u> to the underlying action, thus a subpoena under Rule 45 is entirely appropriate.  *See*

21  *Gonzales*, 234 F.R.D. at 679 ("Rule 45 of the Federal Rules of Civil Procedure governs discovery of

22  nonparties by subpoena.") (citations omitted).

23  **V.     CONCLUSION**

24         Because the testimony Straight Path seeks is highly relevant, admittedly needed, and not

25  unduly burdensome, and because it is not proper to bar relevant discovery in one action simply

26  because the discovery may also be relevant to another action, Straight Path respectfully requests that

27  the Court deny Netflix Motion to Quash Deposition Subpoena.  On the contrary, Netflix should be

28

compelled to comply with Straight Path's subpoenas *duces tecum* and *ad Testificandum*, as requested by Straight Path in its accompanying Motion to Compel Compliance with Subpoena (Docket No. 14).

DATED: June 5, 2014

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

/s/ Michelle Gillette
By:

/s/ Michelle Gillette

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

/s/ Michelle Gillette
By:   MICHELLE GILLETTE

        Attorneys for Plaintiff,

        STRAIGHT PATH IP GROUP, INC.

30696165v.1

CORRECTED OPPOSITION TO NETFLIX'S MOTION TO QUASH SUBPOENA *AD TESTIFICANDUM*
Case No.  MISC. 3:14-MC-80150-WHA