IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRAIGHT PATH IP GROUP, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>BLACKBERRY LIMITED, et al.,<br><br>    Defendants.<br>                                     /<br>NETFLIX, INC.,<br><br>    Third Party.<br>                                       / | No. C 14-80150 WHA<br><br>**ORDER GRANTING MOTION TO QUASH, DENYING MOTION TO COMPEL, AND FINDING ENTITLEMENT TO ATTORNEY'S FEES AND EXPENSES** |

### INTRODUCTION

This miscellaneous discovery matter concerns two massively overbroad discovery demands against a third party, including 46 requests for production and 47 deposition topics embellished by lengthy "definitions" and "instructions." For the reasons detailed herein, the motion to quash the deposition subpoena is **GRANTED**. The cross motion to compel the document (and deposition) subpoena is **DENIED**. The third party is entitled to reasonable attorney's fees and expenses incurred from responding to these oppressive demands.

### STATEMENT

This discovery matter involves four lawsuits filed in the Eastern District of Texas. These lawsuits, however, were not the first time these patents were asserted by Straight Path IP Group, Inc. In August 2013, Straight Path sued a group of defendants in Virginia, all before Judge Anthony Trenga. *See, e.g., Straight Path IP Group, Inc. v. Bandwidth.com, Inc.*, No. 1:13-cv-00932-AJT-IDD (E.D. Va. Aug. 1, 2013); *Straight Path IP Group, Inc. v. Telesphere*

1 *Networks, Ltd.*, No. 1:13-cv-00937-AJT-IDD (E.D. Va. Aug. 1, 2013); *Straight Path IP Group,*
2 *Inc. v. Vocalocity, Inc.*, No. 1:13-cv-01100-AJT-IDD (E.D. Va. Aug. 1, 2013); *Straight Path IP*
3 *Group, Inc. v. LG Electronics, Inc., et al.*, No. 1:13-cv-00933-AJT-IDD (E.D. Va. Aug. 1, 2013);
4 *Straight Path IP Group, Inc. v. Vizio, Inc., et al.*, No. 1:13-cv-00934-AJT-IDD
5 (E.D. Va. Aug. 1, 2013); *Straight Path IP Group, Inc. v. Panasonic Corporation of North*
6 *America, et al.*, No. 1:13-cv-00935-AJT-IDD (E.D. Va. Aug. 1, 2013); *Straight Path IP Group,*
7 *Inc. v. Sharp Corporation, et al.*, No. 1:13-cv-00936-AJT-IDD (E.D. Va. Aug. 1, 2013); *Straight*
8 *Path IP Group, Inc. v. Toshiba Corporation, et al.*, No. 1:13-cv-01070-AJT-IDD
9 (E.D. Va. Aug. 2, 2013); *Straight Path IP Group, Inc. v. Sony Corporation, et al.*,
10 No. 1:13-cv-01071-AJT-IDD (E.D. Va. Aug. 1, 2013).

Straight Path also requested that the International Trade Commission ("ITC") investigate respondents AmTran Logistics, Inc., LG Electronic, Inc., Panasonic Corporation, Sony Computer Entertainment, Inc., Sharp Corporation, Toshiba Corporation, and Vizio, Inc., among others, for alleged patent infringement. *See Certain Point-to-Point Communication Devices and Products Containing Same*, Inv. No. 337-TA-892.

Netflix was not a party to the ITC investigation (or any of the district court lawsuits pending at the time). Nevertheless, in October 2013, Straight Path served Netflix with an ITC subpoena. In January 2014, the ALJ denied Netflix's motion to quash the ITC subpoena. The order, however, noted that "[i]t is expected that Straight Path will abide by its agreement to narrow the scope of the requested information as set forth in its briefs" (Dkt. No. 3, Coughlan Decl. Exh. B). Netflix thereafter "produced technical documents and made source code available for inspection" in the ITC investigation (Dkt. No. 3, Coughlan Decl. ¶ 7). Straight Path sent individuals to inspect Netflix's source code on four occasions. Netflix also produced "technical documents regarding Netflix's backend architecture and operation, and versions of Netflix's content control protocol" (Dkt. No. 32, Coughlan Decl. ¶¶ 6, 7).

In February 2014, a FRCP 30(b)(6) witness for Netflix was deposed for a full day in the ITC investigation (Dkt. No. 3, Coughlan Decl. ¶ 11). The day before the deposition, counsel for

Straight Path confirmed the following topics for the deposition in an email to counsel for Netflix (Dkt. No. 3, Coughlan Decl. Exh. C):

> Hi Jim [counsel for Netflix],
>
> The agreed upon topics for the deposition are related to Straight Path's subpoena to Netflix in the following way:

| Subject of Testimony | Subpoena *ad testificandum* Topic Number |
| --- | --- |
| Sending a request for streaming content from a client with a movie ID to the server | 3, 4, 7–9 |
| The server response to that request (containing a [content delivery network ("CDN")] URL) | 3, 4, 7–9 |
| Connecting to a CDN, *e.g.*, for the purpose of obtaining streaming content | 3, 4, 7–9 |
| General process for displaying the dynamic Netflix UI (Gibbon and Qt WebKit) | 3 |
| Determination of movie availability in response to a client's authorization request for streaming content | 3, 4 |
| Assembling a response in response to a client's request for streaming content | 3, 4 |
| CDN selection (generally) | 3, 4, 7–9 |
| Testimony regarding the Netflix certification process. (Netflix will not be required to provide testimony about the certification process for any individual accused product). | 2, 3 |

There was no further motion practice regarding the deposition. Also, Straight Path did not request additional documents or code (Dkt. No. 32, Coughlan Decl. ¶ 19). Nevertheless, it is now Straight Path's view that Netflix refused to provide adequate discovery on the content delivery network ("CDN") servers.

Straight Path then withdrew its ITC complaint and filed a motion to terminate the ITC investigation. The investigation was terminated days before the hearing was scheduled to begin.

In June 2014, for those defendants that had not yet settled (Vizio, Sony, and Toshiba), the stay in the Virginia actions was lifted. *See, e.g.*, *Vizio*, No. 1:13-cv-00934-AJT-IDD

3

(E.D. Va. June 18, 2014) (Dkt. No. 56). The Virginia actions involve the same three patents at issue in the Texas actions discussed below.

\*  \*  \*

The instant subpoena arises from four actions filed in Texas in August 2013, all before Judge K. Nicole Mitchell. In March 2014, plaintiff Straight Path served third-party Netflix with the instant subpoena for documents and deposition testimony. *See, e.g.*, *Straight Path IP Group, Inc. v. BlackBerry Limited, et al.*, No. 6:13-cv-00604-KNM (E.D. Tex. Aug. 23, 2013); *Straight Path IP Group, Inc. v. Huawei Investment & Holding Co., Ltd., et al.*, No. 6:13-cv-00605-KNM (E.D. Tex. Aug. 23, 2013); *Straight Path IP Group, Inc. v. Samsung Electronics Co., Ltd. et al.*, No. 6:13-cv-00606-KNM (E.D. Tex. Aug. 23, 2013); *Straight Path IP Group, Inc. v. ZTE Corporation, et al.*, No. 6:13-cv-00607-KNM (E.D. Tex. Aug. 23, 2013). According to Straight Path, the asserted patents cover "computer programs and methods of establishing point-to-point communication links over a network" (Dkt. No. 17, Br. 3).

In April 2014, Netflix served written objections and produced "over 800 pages of documents responsive to the [instant] Texas Subpoena. The production include[d] sensitive technical documents" (Dkt. 2, Chen Decl. ¶¶ 8–9). Netflix's content control protocol versions 2.4 to 2.16, 3.0, and 3.1 were produced (Dkt. No. 33, Chen Decl. ¶ 6). Currently, the discovery deadline is in December 2014, and the final pretrial conference will occur in October 2015 (*BlackBerry*, Dkt. No. 82).

While these four actions were underway and this third-party subpoena issue was percolating, in May 2014, Straight Path sued Netflix in a separate action for infringing the same three patents and two others. *See Straight Path IP Group, Inc. v. Netflix, Inc.*, No. 6:14-cv-00405-KNM (E.D. Tex. May 2, 2014). The actions were related and assigned to the same judge, Judge Mitchell. Counsel for Straight Path has stated that "Straight Path would consider consolidating the cases so long as consolidation did not impact the set discovery schedule in those cases" (Dkt. No. 17-1, Newman Decl. ¶ 27).

In May 2014, third-party Netflix filed the instant motion to quash the *deposition* subpoena. Netflix did not move to quash the *document* subpoena, stating (Dkt. No. 1, Br. 4, n.3):

4

> Netflix believes that its substantial existing document production and agreement to produce additional document[s] pending the entry of a modified protective order in the Eastern District of Texas is likely to resolve any dispute between the parties regarding Straight Path's subpoena *duces tecum*. Because the parties continue to meet and confer about Netflix's production of documents, Netflix only move[s] to quash Straight Path's subpoena *ad testificadum* at this time.

On June 3, plaintiff Straight Path Group, Inc. filed an opposition and a separate motion to compel (Dkt. Nos. 15, 17). Straight Path sought documents, source code, and FRCP 30(b)(6) testimony. This order follows full briefing on both motions and oral argument.

\*         \*         \*

To be precise, the instant subpoena matter arises out of the actions *not* involving Netflix as a party. Evidently, no effort has been made to obtain discovery from Netflix in the May 2014 action against Netflix in Texas. Accordingly, this order will be true to the actual procedural history and will treat Netflix as a third party.

## ANALYSIS

FRCP 45(d)(1) states (emphasis added):

> A party or attorney responsible for issuing and serving a subpoena *must take reasonable steps to avoid imposing undue burden or expense* on a person subject to the subpoena. The court for the district where compliance is required *must enforce this duty and impose an appropriate sanction* — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**1.    MOTION TO QUASH THE DEPOSITION SUBPOENA.**

Straight Path's deposition subpoena is massively overbroad. It is too much to impose a subpoena with 47 overbroad deposition topics (some with sub-parts) on a third party. Again, in the posture of the instant proceeding, Netflix is a mere third party, not a defendant. For example, the subpoena includes the following expansive deposition topics (Dkt. No. 2, Chen Decl. Exh. A):

> 4. The discovery provided by You to Straight Path or any respondent in the ITC Investigation.

\*         \*         \*

> 17. For each Defendant, the process(es) by which any Defendant retrieves and integrates error or bug fixes into Source Code for each version of each Netflix Program.

5

\*     \*     \*

21. The methodology, process or steps taken by routers, switches, gateways, or other network equipment or computers owned, leased or controlled in any way by Netflix to route or direct packets between Defendant Networked Devices and any server.

\*     \*     \*

43. The structure, function, operation, Source Code and implementation of the versions of Netflix Programs installed on, accessible by, executed by, and/or compiled onto the Defendant Networked Devices, including, but not limited to, the following:

   a. The structure, function, operation, and implementation of the Source Code for each version of Netflix Program installed on, accessible by, and/or executed by the Defendant Networked Devices;

   b. The structure, function, operation, and implementation of the Source Code for each version of Netflix Program installed on, accessible by, and/or executed by the Defendant Networked Devices;

   c. The structure, function, operation, and implementation of Streaming Services on Netflix Program and/or the ability to provide the function of Streaming Services, including the identity and functionality of Source Code for each version of Netflix Program installed on, accessible by, and/or executed by the Defendant Networked Devices for providing Steaming Services and/or for providing the function of Streaming Services;

   d. The structure, function, operation, and implementation of communications between Netflix Program running on a client and a program, an application, or software running on a piece of hardware, e.g., a computer, processor, or microcontroller, including the identity and functionality of Source Code for each version of Netflix Program that enables, supports, performs and/or embodies said structure, function, operation, or implementation;

   e. The ability for Netflix Program running on a client to instantiate, accept, and/or participate in communications with a program, an application, or software running on a piece of hardware, e.g., a computer, processor, or microcontroller, including the identity and functionality of Source Code for each version of Netflix Program that enables and/or supports this ability;

   f. The structure, function, operation, and implementation of communications between the Netflix Program client and a server (e.g., a Netflix Server-Side Program) and/or the function of enabling or supporting communications between a Defendant Networked Device that runs and/or executes a Netflix Program client and a server that runs and/or executes a Netflix Server-Side Program, such communications including registering the Netflix Program client's online status and its associated network protocol address with the server, sending a query to the server for the online

6

>    status of a second process, and receiving from the server the
>    network protocol address of the second process.
>
>    g. The structure, function, operation, and implementation of
>    Source Code for communications between a Defendant Networked
>    Device that runs a Netflix Program client and a server (e.g., a
>    Netflix Server-Side Program), and/or the function of providing
>    communications between the Netflix Program client and a server
>    (e.g., a Netflix Server-Side Program) as further described in subpart
>    f of this Topic.

It is disingenuous for Straight Path to argue that this deposition subpoena is reasonable because "the burden on Netflix is minimal" (Opp. 1, 7). Responding to this subpoena, collecting and locating materials, and preparing one or more FRCP 30(b)(6) deponents would certainly cost third-party Netflix tens of thousands of dollars, probably into the hundreds of thousands. It is also hard to imagine what deponent would be competent to respond to such largely ambiguous topics. Dozens of deponents would be required.

To further broaden the horizons of this oppressive subpoena, the subpoena included exhaustive definitions for various phrases, including "Documents," "Things," "Technical Documents," and "Communications." Straight Path defined "Networked Device" to mean "any electronic device or piece of equipment, such as a smartphone handset, tablet computer, eReaders, smart TV, gaming console, Blu-ray player, VoIP phone, or set-top box, capable of sending or receiving data over a telecommunications or electronic network." The phrase "Defendant Networked Device" was not restricted to specific accused products but spanned:

>    all Networked Devices branded for sale in the United States,
>    imported into the United States, and/or sold in the United States by
>    or on behalf of any Defendant since 2006, and/or that are or that
>    will be under development by or on behalf of any Defendant during
>    the course of this litigation.

Defendant was defined to cover eleven entities:

>    Blackberry, Ltd; Blackberry Corporation; Huawei
>    Investment & Holding Co.; Huawei Technologies Co., Ltd.;
>    Huawei Technologies USA Inc.; Huawei Device USA, Inc.;
>    Samsung Electronics Co., Ltd.; Samsung Electronics
>    America, Inc.; Samsung Telecommunications America, LLC;
>    ZTE Corporation; and ZTE USA, Inc.

This deposition subpoena is unduly burdensome for a third party and will not be enforced.

7

In opposition, Straight Path argues that it needs a deponent to authenticate certain unidentified documents presumed to be authentic in the ITC proceeding (Opp. 14). This is a costly proposal and a weak justification for such an expansive subpoena. Had Straight Path served only a request to authenticate a few dozen specifically identified documents, the subpoena would likely have been enforced. But the subpoena served was exponentially more burdensome. The swath of the subpoena is so burdensome that it would be bad policy to now whittle it back to something narrow and reasonable. Instead, the baby should go out with the bath water — the entire defective subpoena will be quashed in its entirety. To do otherwise would encourage litigants to demand the moon thinking they can always fall back to something reasonable. They should be reasonable from the start. Accordingly, Netflix's motion to quash the deposition subpoena is **GRANTED**.

### 2. MOTION TO COMPEL.

Although Netflix did not move as to the document subpoena, Straight Path did move to enforce it. But it is likewise so overbroad and burdensome that it will not be enforced. For example, the document subpoena containing 46 requests for production seeks, *inter alia*, the following from third-party Netflix (Dkt. No. 2, Chen Decl. Exh. A):

> 11. All Source Code for each version of each Netflix Program installed on, executed by, accessible by, and/or compiled onto any Defendant Networked Device, including Source Code for each Netflix Program that enables or supports access to or interaction with Streaming Services and/or the instantiation, acceptance, and/or participation in communication between a Netflix Program running on a client and a program, an application, or software running on a piece of hardware, e.g., a computer, processor, or microcontroller.

\* \* \*

> 30. All development plans, product roadmaps, Source Code, and Technical Documents that describe the structure, function, operation, and/or implementation (or anticipated structure, function, operation, and/or implementation) of Future Netflix Programs, including Future Netflix Programs that provide and/or enable Streaming Services, and/or that the instantiate, accept, and/or participate in communications between a Netflix Program running on a client and a program, an application, or software running on a piece of hardware, e.g., a computer, processor, or microcontroller.

\* \* \*

8

> 35. Documents and Things sufficient to show the revenue associated with the Netflix Programs on each Defendant Network Device on a program-by-program basis.
>
>     \*      \*      \*
>
> 45. Documents and Things sufficient to evince all nomenclature that Netflix uses to refer to each Netflix Program and each Netflix Server-Side Program, including, but not limited to (a) all sales, marketing, finance, engineering, or Netflix departmental names or identifications for each Netflix Program and each Netflix Server-Side Program; and (b) all marketing, engineering, design, or Netflix department names used in the development process for each Netflix Program and each Netflix Server-Side Program.

After propounding such oppressive requests, Netflix and Straight Path conferred via telephone. When the parties were unable to resolve their disputes, Straight Path filed its own motion to compel seeking documents responsive to a series of so-called "narrowed" discovery requests. These requests were still overbroad and unduly burdensome. Straight Path seeks:

> Documents and testimony produced in the International Trade Commission Investigation No. 337-TA-892 (the "892 Investigation"):
>
> - A copy of all source code printouts produced by Netflix in the ITC Investigation
>
> - A source code computer that has all source code that Netflix made available for inspection to Straight Path or any respondent in the 892 Investigation
>
> - A copy of the deposition transcript of Netflix's corporate representative, Mr. Philip Fisher-Ogden, including all exhibits marked at the deposition, from the 892 Investigation.
>
> Documents and source code describing the structure, function, and operation of Netflix content delivery network servers ("CDNs") (current production version), including documents and source code describing the following:
>
> - Selection of which CDN(s) to provide the requested media (NCCP source code and associated documentation)
>
> - Signaling between the CDNs and the NCCP server and/or between the CDNs and the client related to streaming and CDN selection (including source code and functional description documents of function and operation of CDN servers and processes running thereon)
>
> - Streaming, load balancing and health reporting processes on CDNs (including source code and functional description documents)

9

- The process of connecting to a CDN (e.g., for the purpose of obtaining streaming content) (including server-side code and functional description documents)

Documents and source code related to the structure, function, and operation of the Netflix Content Control Protocol ("NCCP") servers (current production version), specifically including documents and source code describing the following:

- Content and meaning of the NCCP messages, including registration, authorization, and query messages

- The variation, if any, of the NCCP messages (including registration, authorization, and query messages) depending on the version of Netflix, NRDP, or Netflix Stub Application

- Signaling and messaging between the NCCP server and the Netflix client (including source code and functional description documents)

- Signaling and messaging between the NCCP server and the CDNs (including source code and functional description documents)

Documents relating to marketing, sales, revenue, customer demand, customer surveys and/or customer preferences, as requested in the subpoena.

These requests — amplified by Straight Path's lengthy definitions and instructions — are too oppressive to be enforceable. It is also not even clear which requests in the subpoena map to these new requests.

The same applies to the "compromises" Netflix said it was willing to offer (but which Straight Path was unwilling to accept). *This order will not require Netflix to produce anything because of the severe overreaching by Straight Path.* Again, the baby should go out with the bath water. For example, in the parties' correspondence, Netflix offered to produce 1066 pages of source code print-outs from the ITC investigation and no more. (The protective order in the Texas actions states that "printed portions of Source Code Material that exceed eighty (80) continuous pages or that exceed 900 pages or more of an entire Source Code Material software release shall be rebuttably presumed to be excessive" (Dkt. No. 15, Cole Decl. Exh. A, Attachment A at 16).) Straight Path argues that these 1066 pages do not suffice because then "Straight Path [will be] unable to rely on any additional source code in the Texas Actions, and it

would not have the printouts to use as evidence" (Dkt. No. 17, Br. 12). This is too much. Unsatisfied with the one thousand pages of source code Netflix would be willing to produce in print-out form, Straight Path wants more. Third-party Netflix should not be forced to incur tens of thousands of dollars collecting, reviewing, producing, and printing documents and source code potentially responsive to Straight Path's expansive requests.

Moreover, Straight Path has now twice propounded oppressive discovery requests only to ask for a broad subset once briefing is required. In the ITC, after Netflix incurred the expense of a motion to quash, Straight Path "narrowed" its requests. Documents were produced, source code was made available for review, and a FRCP 30(b)(6) witness was deposed. This time around, Straight Path cast 46 broad requests seeking to capture everything produced before and testified to in the ITC, as well as large categories of additional documents and source code. This is a fishing expedition too burdensome to impose on a third party. Straight Path will not be allowed to so abuse the discovery process.

Finally, Netflix argues that it faces a parade of overbroad discovery abuse in four actions involving the same patents: the ITC investigation (discovery was taken); the Virginia actions (stay lifted in June 2014); the Texas actions (this subpoena); and the *Netflix* action. So far, Straight Path has propounded massive subpoenas in the ITC investigation and Texas actions. Netflix is not a party to those proceedings. To subject third-party Netflix to such repeated overbroad discovery abuse is unduly burdensome.

For the reasons stated herein, the document subpoena will not be enforced.

### 3. ATTORNEY'S FEES AND EXPENSES.

It is appropriate to impose sanctions for serving an unreasonable and unduly burdensome subpoena. *See* FRCP 45(d)(1). Here, Straight Path failed to make a good-faith effort to take reasonable steps to serve a subpoena that avoids imposing undue burden and expense on third-party Netflix. Indeed, there was no substantial justification for Straight Path's massive demands. This order finds, following oral argument, that no other circumstances make the award of fees and expenses unjust. Accordingly, Netflix is *entitled* to reasonable attorney's fees and expenses incurred from making and responding to these motions. A companion order sets forth the special

11

master's procedure for determining the *amount* of fees and expenses. Once an award is determined, counsel for Straight Path, Mintz Levin Cohn Ferris Glovsky and Popco P.C., and Straight Path shall be jointly and severally liable for the award.

## CONCLUSION

Straight Path's oppressive subpoena will not be enforced. For the reasons stated herein, Netflix's motion to quash the deposition subpoena is **GRANTED**. Straight Path's cross motion to compel is **DENIED**. The entire subpoena is **QUASHED**. This, of course, is without prejudice to reasonable, narrowly-tailored requests properly propounded in the *Netflix* action.

In addition, Netflix is entitled to reasonable attorney's fees and expenses incurred from making and responding to these cross motions. A companion order sets forth the special master's procedure for determining the amount of fees and expenses to be paid by Straight Path and its counsel.

**IT IS SO ORDERED.**

Dated: July 8, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE